NOT FOR PUBLICATION                                    (Docket Nos. 14, 15 & 22)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| MARY STALLINGS, CO-EXECUTRIX, and PATRICIA STALLINGS, CO-EXECUTRIX ON BEHALF OF THE ESTATE OF VIOLA STALLINGS, | : : : : : : | |
| Plaintiffs, | : : | Civil No. 08-3121 (RBK/JS) |
| v. | : : | **OPINION** |
| IBM CORPORATION, THE BOARD OF BENEFITS AND PENSIONS of the IBM Disability Retirement and Sickness and Accident Income and Benefits Plans, R.A. BARNES, METLIFE INSURANCE CO., and JOHN DOE(S) 1-15, said name being fictitious and unknown, jointly, severally, and/or in the alternative, | : : : : : : : : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This action arises out of decedent Dr. Viola Stallings' denied claim for disability benefits. Plaintiffs brought claims alleging violations of the Employee Retirement Insurance Security Act (ERISA), 29 U.S.C. § 1001 *et. seq.*, and state law claims for unjust enrichment, breach of implied contract and covenant of good faith and fair dealing. Presently before the Court are a motion for summary judgment by Defendants IBM Corporation and R.A. Barnes (collectively IBM),[1] a

---

[1] Defendant IBM Corporation answered the Complaint denying that The Board of Benefits and Pensions of the IBM Accident Income and Benefits Plans exists as a separate entity. Answer at introduction, ¶ 7.

motion to dismiss by Metlife Insurance Co. (Metlife),[2] and motions for partial summary judgment and to amend by Plaintiffs Mary and Patricia Stallings on behalf of the Estate of Viola Stallings.  For the reasons set forth below, IBM's motion for summary judgment is GRANTED, Metlife's motion to dismiss is GRANTED, Plaintiffs' motion for summary judgment and motion to amend are DENIED, and the John Doe defendants are DISMISSED.

## I.      BACKGROUND

Dr. Viola Stallings, now deceased, began her employment at IBM Corporation on May 3, 1976, and continued to work there through 2002.  In November 2001, Dr. Stallings sustained severe injuries in a work-related automobile accident.  After the accident, Dr. Stallings suffered from various physical and psychological impairments and began working a reduced schedule in late 2001.  Dr. Stallings received medical care approximately every other week from Dr. Arthur Marks after the accident, voicing complaints of headaches, slurred speech, loss of concentration, and possible loss of consciousness.

On March 13, 2002, Dr. Marks recommended that Dr. Stallings take time off of work, which she promptly did.  During her absence, Dr. Stallings continued to by paid by IBM either under unpaid leave or pursuant to IBM's Sickness and Accidents Benefits Plan (S & A Plan) – a short term disability plan.  On April 10, Dr. Marks again evaluated Dr. Stalling and determined that she was unable to work "due to her psychological condition."  Plaintiffs' br. at 2.  Thereafter, on May 23, 2002, IBM contacted Dr. Stallings via latter to notify her that she was not certified for short term disability benefits and that she was on uncertified leave.  The letter requested that

---

[2] Defendant Metlife Insurance Co. stated in its brief that its proper name is Metropolitan Life Insurance Company.  Metlife br. at 1.

Dr. Stallings provide additional documentation to support her short-term disability leave.  On May 28, 2002, IBM also notified Dr. Stallings that she had been selected for an "outsource position elimination" effective June 30, 2002 – in other words, Dr. Stallings' job was terminated.

On June 20, 2002, Dr. Stallings was again evaluated by Dr. Marks, who noted that Dr. Stallings could return to work at least on a part-time basis.  Meanwhile, Dr. Linda Rock, an IBM physician, spoke with Dr. Janice Cederstrom, Dr. Stallings' psychiatrist, and also reviewed the reports submitted by Dr. Stallings.  Dr. Rock determined that no significant medical findings existed as to why she could not return to work.

Dr. Stallings was terminated on June 30, 2002 pursuant to the elimination plan and she received her entire salary and benefits through that date.  At that time she was offered a severance package providing six month pay provided she sign a general release of claims.  Dr. Stallings never signed the release.

On March 31, 2003, Dr. Stallings requested that IBM send her the plan documents for the plans in which she participated as an IBM employee.  On June 12, 2003, IBM sent a letter to Dr. Stallings purportedly enclosing the requested documents.  On July 11, 2003, Dr. Stallings contacted Metlife, the administrator of IBM's IBM Long Term Disability Policy (the LTD Plan), indicating that she intended to file a claim for benefits.  On August 27, 2003, Metlife sent Dr. Stallings a letter informing her that she did not qualify for LTD benefits because she had not qualified for short term disability benefits for the requisite period of time.

On April 1, 2005, Dr. Stallings, through counsel, wrote a letter to IBM requesting retroactive short term disability benefits and long-term disability benefits.  The letter included a conditional request that IBM supply relevant plan documents should Dr. Stallings' claims be

denied.  On April 29, 2005, IBM sent a letter to Dr. Stallings' counsel confirming receipt of the

letter and the enclosed medical documentation, and inviting Dr. Stallings to submit additional

medical evidence.  Dr. Stallings supplemented her April 1, 2005 letter with additional

documentation in May 2005.  On October 10, 2005, IBM plan administrator Rosemarie "R.A."

Barnes issued a letter to Dr. Stallings denying her short term disability claim.  Unfortunately, Dr.

Stallings died in November 2005 from a brain tumor.

      One year later, on October 9, 2006, counsel for the estate of Dr. Stallings wrote IBM

requesting that it reopen the October 2005 short term benefits decision.  The letter requested that

IBM provide counsel with the relevant plan documents.  IBM responded on November 9, 2006,

stating that IBM had reviewed the file and had found no reason to reopen the denial decision.

The letter also supplied the requested plan documents.

      On April 12, 2007, counsel for the Estate of Dr. Stallings again requested that IBM

reopen its October 2005 decision, enclosing additional medical records with the request.  IBM

again denied the request on June 11, 2007.

      Plaintiffs Mary and Patricia Stallings, co-executrixes of the Estate of Dr. Stallings, filed

this action on June 23, 2008 on behalf of the Estate seeking LTD disability benefits under ERISA

(Count One), alleging breach of fiduciary duty (Count Two), alleging failure to provide plan

documents as required by ERISA (Count Three), and alleging unjust enrichment, breach of

implied contract and covenant of good faith and fair dealing (Count Four).  Defendants IBM and

R.A. Barnes (collectively IBM) filed a motion for summary judgment under Federal Rule of

Civil Procedure 56 as to all claims on February 10, 2009, and Defendant Metlife filed a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6) on February 10th as well.  Plaintiffs cross

4

motioned for partial summary judgment and for leave to amend on April 1, 2009.

## II.    STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Id.

Alternatively, in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept Plaintiff's allegations, along with all reasonable inferences that

may be drawn from them, as true.  <u>Doe v. Delie</u>, 257 F.3d 309, 313 (3d Cir. 2001) (citing

<u>Piecknick v. Commonwealth of Pennsylvania</u>, 36 F.3d 1250, 1255 (3d Cir. 1994)).  The court

may dismiss the complaint only if the plaintiff can prove no set of facts that would entitle him to

relief.  <u>Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. &

Research Found.</u>, 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).  Nevertheless, factual

allegations in the complaint "must be enough to raise a right to relief above the speculative

level."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007).

**III.     ANALYSIS**

    **A.     Count I: LTD Benefits**

        **1.     Statute of limitations**

In Count One, Plaintiffs seek recovery of LTD Benefits under 29 U.S.C. § 1132, asserting

that the Defendants reached an arbitrary and capricious decision.  IBM and Metlife both present

the same argument that Plaintiffs' claims for recovery of LTD benefits are time barred.  The

Defendants' motions come to the Court in different procedural postures: a motion for summary

judgment and a motion to dismiss.  For the purpose of clarity and because the conclusion to each

motion is the same regardless of the posture, both arguments are discussed here as motions to

dismiss and both motions are granted.

In considering a motion to dismiss, the court generally may not consider matters

"extraneous to the pleadings."  <u>In re Burlington Coat Factory Sec. Lit.</u>, 114 F.3d 1410, 1426 (3d

Cir. 1997).  However, the court may consider a "'document *integral to or expressly relied* upon

in the complaint'" without converting the motion to dismiss to a summary judgment motion.  <u>Id.</u>

(quoting <u>Shaw v. Digital Equip. Corp.</u>, 82 F.2d 1194, 1220 (1st Cir. 1996)).  Further, "a court

may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Industries, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Complaint repeatedly makes reference to the IBM LTD Plan, see, e.g., Compl. at ¶ 22, and is dependent on Dr. Stallings having been denied LTD benefits.  However, the Plaintiffs did not attach any exhibits to the Complaint.  Notwithstanding, the Court will consider both the actual language of the LTD Policy and Metlife's August 27, 2003 denial letter because both are integral to the Plaintiffs' claim and the denial letter in particular is "undisputedly authentic."  See Plaintiffs' undisputed facts at ¶ 23 (acknowledging Metlife's letter).

### a.    Contractual limitations period

A person can bring a civil action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits due.  ERISA does not contain a statute of limitations for benefits claims under § 502(a)(1)(B).  See Koert v. GE Group Life Assurance Co., 231 Fed. Appx. 117, 119 (3d Cir. 2007).  Courts generally, therefore, borrow the limitations period for the most analogous state cause of action.  Id. (citing Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992)).  The most analogous claim for a benefits claim is breach of contract, which in New Jersey carries a six year limitations period.  Klimowicz v. Unum Life Ins. Co. of Am., 296 Fed. Appx. 248, 250 (3d Cir. 2008).  However, the parties to a benefits plan may contract for a shorter limitations period provided the supplied period is not "manifestly unreasonable."  Id.; Koert, 231 Fed. Appx. at 120.  The Third Circuit has not expressly stated what makes a contractual period unreasonable in the ERISA context, but has found as little as a three year limitations period reasonable.  See Klimowicz, 296 Fed. Appx. at 251; Koert, 231 Fed. Appx. at 120; Fontana v.

<u>Diversified Group Adm'rs, Inc.</u>, 67 Fed. Appx. 722, 724 n.1 (3d Cir. 2003); <u>see also</u> <u>Grasselino v. First Unum Life Ins. Co.</u>, No. 08-cv-635, 2008 WL 5416403, at *3 (D.N.J. Dec. 22, 2008). Other courts have found anywhere from 90 days, to 12 months, to 2 years and 90 days to be reasonable limitations periods.  <u>See</u> <u>Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan</u>, 160 F.3d 1301, 1304 (11th Cir. 1998) (upholding 90 days); <u>Payne v. Blue Cross & Blue Shield</u>, 976 F.2d 727 (Table), 1992 WL 235537, at *2 (4th Cir. 1992) (upholding 12 months); <u>Scheirer v. NMU Pension & Welfare Plan</u>, 585 F. Supp. 76, 78 (S.D.N.Y. 1984) (upholding 2 years and 90 days).

As an initial matter, against whom and under what grounds Plaintiffs seek recovery of LTD benefits is unclear.  For example, in Count One, Plaintiffs have captioned the claim as "'Recovery of LTD Disability Retirement Benefits Due Pursuant to 29 U.S.C. § 1132.'"  However, in the prayer for relief under Count One, Plaintiffs only demand judgment against Defendants IBM's Board of Benefits and Pensions, R.A. Barnes, and John Doe(s), Compl. at ¶ 53, but not Metlife – who seemingly has the sole ability to provide the relief.  <u>Id.</u> at ¶ 9 ("Metlife was at all times from May 8, 2002 an ERISA fiduciary and the adjudicator of benefit entitlement under the IBM Long Term Disability Benefits plan.").  Adding to the confusion, in Count Two, Plaintiffs captioned the claim as "Breach of Fiduciary Duty' vs. IBM Corp., Board of Benefits and Pensions, R.A. Barnes and John Doe(s)"; however, in the prayer for relief, Plaintiffs demand judgment against those parties *and* Metlife.  Compl. at ¶ 61.  Count Two is especially confusing because at no point in the Complaint do Plaintiffs allege that Metlife breached a fiduciary duty, rather the breach allegations are aimed at the IBM Defendants.

Notwithstanding the ambiguous pleadings, the substance of the benefits recovery claim

appears to be a claim for relief under 29 U.S.C. § 1132(a)(1)(B), and because all parties have responded as if Plaintiffs were seeking recovery of benefits under that provision, the Court will analyze the motions as such.  See Plaintiffs' br. at 15 ("New Jersey's six year statute of limitations for breach of contract claims governs Plaintiffs' LTD benefits claims under ERISA."); Metlife br. at 1 ("The only relief sought in the Complaint as against Metlife is a rehearing of Stallings' claim for long term disability benefits pursuant to the terms of the IBM Long-Term Disability Plan.  The Plaintiffs also seek additional relief from [IBM] in the form of 'long term disability retirement benefits' pursuant to [ERISA] . . . ."); IBM SJ br. at 1 ("Plaintiffs Mary and Patricia Stallings have brought this action on behalf of the Estate of Viola Stallings . . . alleging that IBM and/or its long-term disability plan administrator, [Metlife] wrongfully denied Stallings (sic) long-term disability benefits pursuant to 29 U.S.C. § 1132 . . . .").

The Court's review of the limitations claims is twofold: 1) whether the limitations period in the LTD Plan applies, and if so, 2) when did Plaintiffs' claim under the LTD Plan accrue.

**b.      Application of the LTD Plan's limitations period**

As discussed, parties may be bound by a shorter limitations period if they agreed to a period that is not "manifestly unreasonable."  See Klimowicz, 296 Fed. Appx. at 250.  Plaintiffs first challenge the LTD Plan's limitations period by  claiming that Dr. Stallings never assented to the two year period.  Plaintiffs' br. at 16.  Plaintiffs' direct the Court's attention to a non-ERISA case applying Pennsylvania state law as authority for the proposition that a person can accept benefits of an ERISA plan without being bound by the plan's detriments.  See Plaintiffs' br. at 16 (citing Kirleis v. Dickie, McCamey & Chilcota, P.C., 560 F.3d 156 (3d Cir. 2009)).  Kirleis decided whether a partner at a law firm was bound by an arbitration provision in the firm's

bylaws where the partner claimed to have never seen or agreed to the provision.  560 F.3d at 159-60.

The Plaintiffs' reliance on <u>Kirleis</u> is misplaced and their lack of assent argument must fail.  <u>Kirleis</u>'s holding regarding Pennsylvania contract law is certainly not applicable where the dispute is over an ERISA plan that is heavily regulated under federal law and the where the disputed provision is just one of many in a single plan under which the Plaintiffs seek recovery. Instead, the Court agrees with the logic used in <u>Scheirer v. NMU Pension & Welfare Plan</u>, 585 F. Supp. 76, 79 (S.D.N.Y. 1984), an ERISA case, wherein the court reasoned "it would be anomalous for this Court to allow plaintiff to maintain an action to recover a benefit which was created by and exists solely because of the regulations of the [ERISA plan], while at the same time to deny effect to the conditions those same regulations place upon receipt of that benefit." Thus, Plaintiffs' challenge that Dr. Stallings did not agree to the LTD Plan's limitations period fails.

Plaintiffs second challenge to the LTD Plan's limitations period is that it is unreasonable because it is only one third of New Jersey's six year breach of contract limitations period.  <u>See</u> Plaintiffs' br. at 15.  This challenge is unpersuasive.  Plaintiffs have not directed the Court's attention to any case holding that two years is unreasonable or that the proper touchstone for the reasonableness of a limitations period is a comparison to the venue state's limitations period.  In the absence of such authority, the Court holds that nothing about the two year limitations period is "manifestly unreasonable" because the period provided sufficient opportunity for the Plaintiffs to state a claim for benefits, the two year period is not substantially different from previously upheld three year periods, <u>see, e.g.</u>, <u>Klimowicz</u>, 296 Fed. Appx. at 251, and the period does

interfere with Congress's intent to protect ERISA beneficiaries and participants.  See generally 29 U.S.C. § 1001 (Congressional findings and declaration of policy).

Plaintiffs' third challenge to the limitations period is that even if it should otherwise apply, the Defendants are barred from enforcing it by equitable estoppel and waiver.  See Plaintiffs' br. at 17.  These defenses are easily rejected.  For an equitable estoppel claim, the party asserting it must show three elements: "1) a material representation, 2) reasonable and detrimental reliance upon the representation, and 3) extraordinary circumstances."  Curcio v. John Hancock Mut. Life. Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994).  What constitutes extraordinary circumstances is a case-specific inquiry, see id. at 237, but generally it involves acts of bad faith.  Jordon v. Fed. Express Corp., 116 F.3d 1005, 1011 (3d Cir. 1997).  A waiver claim, on the other hand, requires that the asserting party show that the opponent intentionally relinquished or abandoned "a known right or privilege."  Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

Plaintiff's memorandum of law generally lumps waiver and estoppel together without directing the Court's attention to which factual allegations attach to which equitable defense and without directing the Court's attention to the predicate elements.  On the issue of estoppel, Plaintiffs' seemingly assert that estoppel applies because no defendant promptly (if ever) alerted Dr. Stallings to her right to appeal or the process for her appeal, and also because IBM in particular "misdirected" Dr. Stallings by allowing her to submit additional medical evidence.  See Plaintiffs' br. at 17-19.[3]  These allegations are insufficient to state an estoppel defense.  As to

---

[3] Plaintiffs' electronically filed memorandum of law, Docket No. 22, contains two page 18's.  The difference between the two is slight and the Plaintiffs' argument is otherwise cohesive

Case 1:08-cv-03121-RBK-JS   Document 42   Filed 09/08/09   Page 12 of 33 PageID: 1074

the lack of notice of an appeal right, that deficiency is considerably less than a representation of

fact upon which Dr. Stallings detrimentally relied.  If Dr. Stallings had no notice of her right to

appeal, that lack of notice was not a representation that no right existed.  Moreover, even if lack

of notice were a representation, it did not pose extraordinary circumstances sufficient to avoid the

application of the LTD Plan's limitations period.  See Grasselino, 2008 WL 5416403, at *6

(holding plan's limitations period not tolled where defendant failed to notify plaintiff of right to

appeal).  Likewise, as to the assertion that IBM allowing Dr. Stallings to submit additional

evidence for review estops the Defendants from asserting the contractual limitations period, that

claim likewise fails to pose extraordinary circumstances.  See O'Donnell v. Metro. Life Ins. Co.,

No. 08-cv-1117, 2009 WL 884699, at *3 (S.D.N.Y. Feb. 20, 2009) (discussing IBM's LTD Plan

and holding that plaintiff's claim for relief accrued even though Metlife allegedly continued to

review plaintiff's claim), report and recommendation adopted, 2009 WL 884811 (S.D.N.Y. Mar.

31, 2009).  Thus, Plaintiffs' estoppel defense to the limitations period fails.

      On the issue of waiver, Plaintiffs' defense also fails.  Relying on the same general factual

allegations (that no Defendant timely informed Dr. Stallings (if ever) of her right to appeal and

that IBM misdirected Dr. Stallings), nothing in Plaintiffs' argument suggests that any of the

Defendants abandoned a known right.  Read charitably, the Plaintiffs' factual allegations show a

breach of duty but not a waiver of a right.  Moreover, even if any of the Defendants' actions

could be interpreted to show a waiver, ERISA precludes any modification of a covered plan – to

the party's detriment or benefit – without a writing.  See Hozier v. Midwest Fasteners, Inc., 908

F.2d 1155, 1163 (3d Cir. 1990).  No written waiver is alleged to exist here.  Thus, the Plaintiffs'

---

on the papers filed.

12

waiver defense to the limitations period fails.

Therefore, given that the Plaintiffs have no legitimate defenses to the LTD Plan's limitations period, and given that the clause is otherwise reasonable, Plaintiffs' claim for LTD benefits must be analyzed using a two year limitations period.  The inquiry must then turn to when Plaintiffs' claim accrued.

### c.      Accrual

The Third Circuit applies the "discovery rule" to determine when a cause of action arises for statute of limitations purposes.  Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 (3d Cir. 2007).  "In the ERISA context, the discovery rule has been 'developed' into the more specific 'clear repudiation' rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied."  Id.  The clear repudiation rule does not require a formal denial or even a formal application, rather the rule only requires a "clear" repudiation that is made known to the plaintiff.  Id. at 521.  A limitations period is not tolled under ERISA where the defendant fails to inform the plaintiff of his right to appeal, provided the plaintiff receives clear notice that his right to benefits is being denied.[4]  See Grasselino v. First Unum Life. Ins. Co., No. 08-cv-635, 2008 WL 5416403, at *6 (D.N.J. Dec. 22, 2008) (citing Miller, 475 F.3d at 521-23; Klimowicz, 2008 WL 4531958).

Plaintiffs argue on two fronts that their claim for benefits never accrued: 1) Dr. Stallings

---

[4] The right to appeal is significant in the ERISA context because regulations require that the participant or beneficiary be provided appeal information and the applicable time period following "an adverse determination on review."  29 C.F.R. § 2560.503-1(g)(iv).  However, the remedy for violation of this regulation is a right to relief under § 502(a) of ERISA for failure to provide a reasonable claims procedure.  § 2560.503-1(l).

never submitted a written application or submitted proof of injury to Metlife, and 2) allowing a claim to accrue absent proof of injury would lead to unpredictable application of ERISA limitations periods. Plaintiffs' br. at 16, 19. Plaintiffs' first defense is based on language in the LTD Plan that states "no legal action may be started to obtain legal benefits until 60 days *after proof is given*." Id. (emphasis added). Plaintiffs submit that Dr. Stallings never submitted any proof, thus the limitations period never began. However, the LTD Plan also states "Proof of . . . injury or sickness should, if possible, be provided to Metropolitan within 90 days after the date you would be first entitled to receive Long-Term Disability benefits. In no case should this proof be provided *any later than 12 months* after the date you would be entitled to first receive Long-Term disability benefits." Metlife br. at Ex. A at Metlife0035 (LTD Plan) (emphasis added). On the basis of this last provision, Plaintiffs cannot defensibly argue that Dr. Stallings controlled the accrual of her claim under the terms of the LTD Plan. The LTD Plan clearly limits the time within which a participant must file a claim. A conclusion that Dr. Stallings controlled when her claim accrued would lead to an "indefinite limitations period," which the Third Circuit has definitively foreclosed. See Miller, 475 F.3d at 522.

Plaintiffs second defense is easily dispatched. Plaintiffs rely on White v. Sunlife Assurance Co. of Canada, 488 F.3d 240, 247-53 (4th Cir. 2007), for the proposition that accrual absent a claim of proof would lead to unpredictability in ERISA regulation. See Plaintiffs' br. at 16. Whatever merit White may have in its reasoning, it has no bearing here. The Fourth Circuit in White used an accrual test based on a formal denial, 488 F.3d at 246, which is directly contrary to the Third Circuit's test in Miller. Thus, the Court cannot be bound by White's reasoning or Plaintiffs' argument thereunder.

14

Therefore, applying the clear repudiation rule, Dr. Stallings' claim accrued approximately on August 27, 2003 when she received the letter from Metlife denying her claim for LTD benefits.  The letter stated: "Since you did not complete the waiting period as defined above, you are not eligible for Long Term Disability.  Therefore your long term Disability Claim is denied."  Metlife br. at Ex. B.  This language is clear evidence that Metlife was repudiating any claim Dr. Stallings had to benefits, and the letter clearly communicated that to her.  Even though the denial letter had no directions on how to appeal, the letter still clearly repudiated Dr. Stallings' claim.  Thus, the limitations period on Dr. Stallings' claim began in August 2003 and expired two years later in August 2005.  Because Plaintiffs did not file suit until June 23, 2008, Docket No. 1, Plaintiffs claims for LTD benefits are untimely.  Metlife's motion to dismiss is therefore granted and IBM's motion for summary judgment is granted as to Count One.[5]

### 2.    Plan administrator

But for the limitations defense above, summary judgment would also be proper on Count One for IBM because IBM was not the LTD Plan administrator.  IBM asserts that at all times Metlife was the LTD Plan administrator.  IBM asserts that under the LTD Plan, participants were to submit all claims for LTD benefits to Metlife and Metlife alone had discretion to grant or deny the claims.  IBM SJ br. at 13 (citing Ex. W at IBM01302 (the LTD Plan)).  IBM further asserts that the Plaintiffs admit that Metlife was the decision-maker with respect to the LTD Plan.  See id.; Compl. at ¶ 9 ("Metlife was at all times from May 8, 2002 an ERISA fiduciary and the adjudicator of benefit entitlement under the IBM Long Term Disability Benefits Plan.").  IBM

---

[5] Because the Court grants Defendants' motions on the limitations defense, analysis of Plaintiffs' "conflict of interest" standard of review claim in Count I is moot.

then concludes that Plaintiffs' claim for recovery of LTD benefits should be dismissed because Metlife made the decision with regard to LTD benefits, Dr. Stallings never submitted a claim to IBM for LTD benefits, and because IBM had no input on the decision.

Plaintiffs seemingly offer no response, factual or legal, to IBM's defense. Plaintiffs agree that Dr. Stallings intended to file a claim with Metlife for LTD benefits in July 2003, and Plaintiffs agree that Metlife determined eligibility for LTD benefits in its discretion. Plaintiffs' undisputed facts at ¶¶ 22, 42. On the basis of these facts and admissions, the Court is inclined to agree that the IBM Defendants' motion for summary judgment should be granted as to Count I. However, because the law and factual allegations are well developed as to IBM's limitations defense as discussed above, the Court grants summary judgment on the limitations defense.

### B.    Count Two: Breach of Fiduciary Duty[6]

Defendant IBM makes two preliminary challenges to Count Two that are quickly disposed of. First, IBM asserts that Plaintiffs' breach of fiduciary duty claim is pre-empted. <u>See</u> IBM SJ br. at 20. To the extent that Plaintiffs are asserting a state law claim in Count Two, the claim is pre-empted for the reasons discussed *infra*. However, Plaintiffs have responded as if the claim is for relief under ERISA and the Court will respond as such. Thus, IBM's pre-emption challenge fails.

Second, IBM asserts that Plaintiffs' claim for disability benefits in Count Two is time barred for the same reasons as discussed above. <u>See</u> IBM SJ br. at 9 n.5. Because IBM has

---

[6] To the extent Plaintiffs claim breach of fiduciary duty against Metlife under Count Two, that claim fails and is dismissed because Plaintiffs failed to allege any facts showing a breach by Metlife. <u>See</u> Compl. at ¶ 61(a)-(g); Plaintiffs' br. at 20 (caption to "Point V" only alleges that IBM and Rosemarie Barnes breached a fiduciary duty).

provided little support for this argument as applied to Count Two and because the Court otherwise finds that Plaintiffs' breach of fiduciary duty claim is improper, IBM's limitations period challenge fails as well.

       **1.**       **ERISA § 502(a)(2)**

Plaintiffs' breach of fiduciary duty claim in Count Two is based on ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and § 502(a)(3), 29 U.S.C. § 1132(a)(3).  See Plaintiffs' br. at 20. Section 502(a)(2) enables civil suits for violations of § 409 of ERISA, 29 U.S.C. § 1109, which outlines liability for breach of fiduciary duty to a plan.  Recovery under § 502(a)(2) "inures to the benefit of the plan as a whole," Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985), meaning individuals generally cannot recover personal damages for a breach of fiduciary duty.  Precopio v. Bankers Life & Cas. Co., No. 01-cv-5721, 2004 WL 5284512, at *28-29 (D.N.J. Aug. 10, 2004).  However, the Supreme Court recently announced a limited exception to this rule, holding that in defined contribution plans (versus defined benefits plans) an individual can recover under § 502(a)(2) for breaches of fiduciary duty that caused the individual's personal account to lose value.  LaRue v. DeWolff, Boberg & Assocs., Inc., 128 S. Ct. 1020, 1025 (2008).

Plaintiffs' only seek personal recovery of LTD benefits purportedly due to Dr. Stallings and do not seek derivative recovery for the LTD Plan itself.  See Compl. at 15.  Plaintiffs argue that suit under § 502(a)(2) is appropriate because LaRue eroded the rule announced in Russell and now permits individual recovery for breach of fiduciary duty.  See Plaintiffs' br. at 20. Plaintiffs' argument misunderstands the limited nature of LaRue and therefore fails.

       LaRue itself clearly limits its holding to defined contribution plans, 128 S. Ct. at 1025,

which are not at stake here.  Every court to review <u>LaRue</u> outside of the defined contribution plan context has held that individual recovery for breach of fiduciary duty is barred.  <u>See, e.g.</u>, <u>Rosenblatt v. United Way of Greater Houston</u>, 590 F. Supp. 2d 863, 876 (S.D. Tex. 2008); <u>Estate of Spinner v. Anthem Health Plans of Virginia</u>, 589 F. Supp. 2d 738, 746 (W.D. Va. 2008); <u>Fenwick v. Merrill Lynch & Co., Inc.</u>, 570 F. Supp. 2d 366, 375 (D. Conn. 2008).  Therefore, the Court grants IBM summary judgment as to Plaintiffs' claim under Count Two for breach of fiduciary duty under § 502(a)(2).

### 2.   ERISA  § 502(a)(3)

Plaintiffs also seek recovery in Count Two under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  <u>See</u> Plaintiffs' br. at 20.  Section 502(a)(3) is a civil enforcement "catch all" that provides equitable relief for injuries not remedied elsewhere in § 502.  <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512 (1996).  Unlike § 502(a)(2), § 502(a)(3) permits individual relief.  <u>Id.</u> at 511; <u>Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund</u>, 12 F.3d 1292, 1299 (3d Cir. 1993).  Notwithstanding, § 502(a)(3) has its limits.  First, the section only provides equitable relief, meaning only relief that was traditionally available in courts of equity.  <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 209-10 (2002).  Second, the section only applies where the participant or beneficiary is seeking a remedy that is not otherwise recoverable under § 502.  <u>Precopio</u>, 2004 WL 5284512, at *31 (citing <u>Varity</u>, 516 U.S. at 515; <u>Ream v. Frey</u>, 107 F.3d 147, 152 (3d Cir. 1997)).  This second limitation does not mean that the party must have a *successful* claim elsewhere under § 502, rather the party must not even have a *potential* claim.  <u>Id.</u> (citing <u>Tolson v. Avondale Ind., Inc.</u>, 141 F.3d 604, 610-11 (5th Cir. 1998)); <u>Estate of Spinner</u>, 589 F. Supp. 2d at 746.

Under these standards, Plaintiffs claims for relief under § 502(a)(3) fails.  First, Plaintiffs are seeking legal and not equitable relief.  Plaintiffs' requests in Count Two mostly seek recovery of money purportedly due and owing to the late Dr. Stallings.  Plaintiffs couch their claim as one for "restitution," but placing an equitable moniker on the relief sought does not automatically convert the relief into equitable relief.  See Great-West, 534 U.S. at 212 (holding "not all relief falling under the rubric of restitution is available in equity").  Purported restitution that seeks only payment of funds owed rather than a recovery of funds to which the party once had rightful title is "'quintessentially an action at law.'"  Id. at 210, 213 (quoting Wal-Mart Stores, Inc. v. Wells, 213 F.3d 398, 401 (7th Cir. 2000)).  Plaintiffs' claims here are exactly that – an action at law.  Dr. Stallings never had title to the funds and only claimed to have a contractual right to them.  Therefore, relief in Count Two for her LTD benefits fails.

The remainder of the relief Plaintiffs seek in Count Two also fails because the Plaintiffs otherwise have a remedy under § 502 – albeit an unsuccessful one.  As sought in Plaintiffs' Count One and as discussed at length above, Plaintiffs' have a viable claim under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Merely because Plaintiffs' claim fails on a limitations defense does not mean that they are now entitled to seek relief under ERISA's catch all provision.  Stated differently, Plaintiffs had viable grounds to seek recovery for any fiduciary breach by IBM that caused them injury under § 502(a)(1)(B), but Dr. Stallings and now her Estate missed the period in which to file a claim.  Thus, relief under § 502(a)(3) is inappropriate because Plaintiffs' alleged injuries were otherwise remediable under another provision.

19

Defendant IBM is therefore granted summary judgment as to Count Two.[7]

## C.   Count Three

In Count Three, Plaintiffs seek recovery for IBM's failure to provide requested information as required under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and enforceable under ERISA § 502(c), 29 U.S.C. § 1132(c)(1).  Plaintiffs have moved for partial summary judgment on this claim.  Plaintiffs' claim fails because the purported "request" was not a request under ERISA and even if it were, a penalty would not otherwise be appropriate.

Section 104(b)(4) of ERISA provides that an "administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated."  § 1024(b)(4).  A breach of this provision is actionable under § 502(c)(1), which after 30 days permits a participant or beneficiary to recover a statutory penalty for each day the requested information is not provided.  § 1132(c)(1).[8]  The purpose behind § 502(c)(1) is to "induce plan administrators to comply with ERISA's disclosure provisions, and not to make a participant whole."  <u>Maiuro v. Federal Express Corp.</u>, 843 F Supp. 935, 943 (D.N.J. 1994) (citing <u>Groves v. Modified Retirement Plan for Hourly Paid Employees of the Johns Mansville Corp.</u>, 803 F.2d 109, 117 (3d

---

[7] As noted above "IBM" means IBM Corporation and R.A. Barnes.  Plaintiffs and Defendants each separately briefed the issue of Ms. Barnes' individual liability, but because Plaintiffs' claims in Count Two are otherwise defective, that issue is moot and summary judgment is granted to IBM Corporation and R.A. Barnes.

[8] As enacted, § 502(c) only provides for a $100 per day penalty; however, the penalty has been increased to $110 per day by regulation.  29 C.F.R. § 2575.502c-1.

20

Cir. 1986)).

Section 502(c)(1) is a penal statute and as such is "narrowly construed." Groves, 803 F.2d at 118. This means that the terms of the statute are strictly defined, see Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d 1491, 1505 (3d Cir. 1994), and a plaintiff seeking damages under the statue must show compliance with the "statutory prerequisites." Porcellini v. Strassheim Printing Co., Inc., 578 F. Supp. 605, 611 (E.D. Pa. 1983). In this dispute, Plaintiffs must therefore show that there was "written request" for plan information, IBM failed to comply with the request, and a monetary penalty is warranted. See § 1132(c)(1).

### 1.    Written request

What constitutes a written "request" is not defined under § 502(c). See Haberern, 24 F.3d at 1505-06. The Third Circuit has seemingly held that a request must at least contain an actual demand for the plan documents. Id. at 1505-06 (holding letter from attorney requesting meeting and stating that certain materials "had not been supplied" was not a request). The Court also recently announced that a "clear notice test" test should be applied to requests, meaning the purported request is only sufficient if a reasonable administrator knew or should have known that the plaintiff requested plan documents. See Kollman v. Hewitt Assocs., LLC., 487 F.3d 139, 144, 145 (3d Cir. 2007); see also Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir. 1990) (holding handwritten note requesting "policies covering my contract for salary continuation" not a request because no evidence to show that administrator "knew or should have known that [plaintiff] had requested a copy of any documents relating to the [plan]"); Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (holding plaintiff made request for plan documents

where requests were not "equivocal").

In this dispute, at least three purported requests are shown – only one of which is at issue. The first request occurred on March 31, 2003, when Dr. Stallings requested that IBM send her plan documents for the plans in which she participated as an IBM employee.  Plaintiffs' undisputed facts at ¶ 20.  IBM claims to have responded to this request with the appropriate documents on two occasions: May 5, 2003 and June 12, 2003.  See IBM SJ reply br. at 6, Ex. A (May 5, 2003 response)[9]; Plaintiffs' undisputed facts at ¶ 21 (June 12, 2003 response).[10]  IBM's response or failure to respond to the March 31, 2003 request is not in issue.

Dr. Stallings' purported second request occurred when Dr. Stallings' counsel sent a letter to IBM on April 1, 2005 seeking retroactive benefits.  That letter contained the following language: "Should this request for Disability Retirement benefits not be immediately granted, I request copies of all IBM policies, Employee Benefit plans, summary IBM plan descriptions and other documents explaining the eligibility criteria for IBM Disability Retirement benefits effective as of March 2002."  IBM SJ br. at Ex. L; Plaintiffs' undisputed facts at ¶ 24.  Dr. Stallings' counsel acknowledged that this purported request was a "conditional request."  IBM SJ br. at Ex. R (letter from counsel to IBM dated October 9, 2006: "I remain unable to quote the specific Plan provisions since my April 1, 2005 conditional request for copies of all IBM policies, employee benefit plans, summary plan descriptions and other documents . . . has not yet

---

[9] This purported disclosure was not stated in IBM's statement of material facts and arises in the papers for the first time in IBM's reply brief.  Plaintiffs did not address this purported disclosure and thus the Court treats it as a disputed fact.

[10] Notably Plaintiffs acknowledge the text of IBM's letter that states the relevant documents are enclosed, but Plaintiffs do not acknowledge that the documents were actually enclosed.

been granted.").  Six months later, on October 10, 2005, IBM informed Dr. Stallings that her

April 1, 2005 request for retroactive benefits was denied.  Plaintiffs' undisputed facts at ¶ 29.

IBM did not, however, provide any plan documents with the denial, but did state the following:

"If you would like a copy of the Summary Plan Description or any other information relevant to

this claim, please contact the Employee Services Center at 1-800-796-9876."  IBM SJ br. at Ex.

Q; Plaintiffs' undisputed facts at ¶ 29.

Dr. Stallings' third purported request occurred on October 9, 2006 when her counsel

again requested that IBM grant retroactive benefits.  Plaintiffs' undisputed facts at ¶ 31.  IBM

sent the relevant plan documents on November 9, 2006.  Id. at ¶ 33; Plaintiffs' br. at 17 ("[IBM]

also failed to provide counsel the requested governing IBM benefits Plan documents for at least

18 months until November 9, 2006.").  This third purported request is also not in dispute.

Based on the tests discussed above, the Court holds that Dr. Stallings' second purported

request was not a statutory request under ERISA and she is therefore not entitled to relief.

Plaintiffs do not dispute that the April 1 letter was a "conditional request."  Because of its

conditional nature, the "request," at the moment IBM received it, was not in fact requesting

anything – rather it merely expressed an interest in receiving the relevant documents should

certain events occur.  In other words, Dr. Stallings did not show a clear intent to receive plan

documents.  Cf. Haberern, 24 F.3d at 1505-06.  Moreover, it is not clear to the Court that Dr.

Stallings herself viewed the April 2005 letter as a statutory request since she did not request the

documents again until over one year later in October 2006, she did not follow up with the

Employee Services Center to get the requested documents per the October 2005 denial letter, and

she did not file suit to remedy the violation for over three years.  Simply put, the equivocal nature

of the "request" is insufficient to support a violation of a penal statute that is narrowly construed
and interpreted.  See Groves, 803 F.2d at 118.  Thus, the Court finds no violation of § 502(c).

### 2.      Discretionary penalty

Even if the Court had found a violation of § 502(c), a statutory penalty would not
otherwise have been warranted under the circumstances.  Penalties under § 502(c)(1) are in the
discretion of the court.  Maiuro, 843 F. Supp. at 943.   This discretion permits the court to levy
no sanction even where a technical violation is found.  See Gillis v. Hoechst Celanese Corp., 4
F.3d 1137, 1148 (3d Cir. 1993).  In levying a penalty, the court may look for "'bad faith or
intentional conduct on the part of the administrator, the length of the delay, the number of
requests made and documents withheld, and the existence of any prejudice to the participant or
beneficiary.'"  Boyadjian v. Cigna Companies, 973 F. Supp. 500, 505 (D.N.J. 1997) (quoting
Pagovich v. Moskowitz, 865 F. Supp. 130, 137 (S.D.N.Y. 1994)).  Prejudice to the participant or
beneficiary is not required.  Maiuro, 843 F. Supp. at 943.

Many factors weigh against finding a penalty in this dispute.  First, nothing suggests that
IBM's failure to respond to the April 2005 "request" was in bad faith or intentional, but rather
the delay was seemingly caused by the unusual circumstances of the "request" (e.g., it was
conditional upon the results of a benefits adjudication that took six months to complete).
Second, while the delay between the purported request and the actual disclosure was over one
year, the delay is again readily explained by the unusual circumstances of the "request."  Third,
Dr. Stallings made only one additional request after April 2005 and that request was quickly
fulfilled.  Moreover, Dr. Stallings – though not required to by ERISA – did not follow up on
IBM's October 2005 letter explaining how to get plan documents, thus indicating that she had

not really requested them.  Fourth, while Plaintiffs repeatedly claim prejudice as a result of the delay, see, e.g., Plaintiffs' br. at 22, Dr. Stallings appears to in fact have had the plan documents as early as June 12, 2003, which destroys any claim of prejudice.  See Plaintiffs' undisputed facts at ¶ 21.  Plaintiffs' counter to this assertion is a half-hearted acknowledgment that while Dr. Stallings received the letter stating the requested documents were enclosed, she only received the documents "at some point after March 31, 2003."  Id.  Plaintiffs readily have in their possession and control whether or not Dr. Stallings received the requested documents in 2003 and yet fail to so disclose.  Therefore, on the totality of the circumstances, a penalty would not otherwise have been warranted under the circumstances.

However, because the Court held above that Dr. Stallings did not in fact make a statutory request, Plaintiffs' motion for summary judgment as to Count Three is denied, and IBM's motion for summary judgment as to Count Three is granted.

### D.   Count Four: State Law Claims

In Count Four, Plaintiffs bring state law claims for unjust enrichment, breach of implied contract and covenant of good faith and fair dealing against IBM.  IBM argues that these claims are pre-empted by ERISA.  IBM SJ br. at 19-21.  This argument is unopposed by the Plaintiffs.  Because the claim relates to an ERISA plan, Count Four is pre-empted and IBM is granted summary judgment.

Under § 514(a) of ERISA, 29 U.S.C. § 1144(a), all state laws that "relate to" an employee benefit plan covered by the Act are pre-empted.  The purpose of the pre-emption clause is to ensure uniform regulation and administration of employee benefit plans.  New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995).

The Supreme Court has held that the "relate to" language is deliberately broad in scope and Congress intended that it be "expansively applied." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138-39 (1990). State law includes "all laws, decisions, rules, regulations, or other State action having the effect of law[.]" § 1144(c)(1). Notwithstanding the broad pre-emption language, the pre-emption clause does not apply where a state law "'has only a tenuous, remote, or peripheral connection with covered plans, as is the case with laws of general applicability.'" Travelers, 514 U.S. at 661 (quoting District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n.1 (1992)).

The established test for whether a state law "relates to" a covered plan is whether the law "has a connection with or reference to such a plan." Ingersoll-Rand, 498 U.S. at 139 (quotations removed). In part, the test means that a state law is pre-empted if the cause of action is premised on the existence of a plan. See id. at 140 (holding state law claim for wrongful termination pre-empted where claim depended on showing that employee was terminated to avoid payment of pension benefits).

Plaintiffs' claim in Count Four relates to a severance benefits package. Certain severance benefits plans are covered by ERISA where the employer "'has expressed an intention to provide benefits on a regular and long-term basis.'" Brennan v. Cephalon, Inc., No. 04-cv-3241, 2005 WL 2807195, at *15 (D.N.J. Oct. 25, 2005) (quoting Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 789 (3d Cir. 1998)), aff'd, 298 Fed. Appx. 147 (3d Cir. 1998). IBM proffers that the severance package was an ERISA plan and attaches the terms of the plan as an exhibit to its motion for summary judgment. See IBM SJ br. at 21, Ex. G. The text of the plan itself states that it is subject to ERISA. Id. at Ex. G at IBM00388. Plaintiffs offer no response to this

assertion.

Based upon a review of the plan and the supporting argument from IBM, the Court finds that IBM's motion for summary judgment properly supports that the severance plan is an ERISA plan.  See Fed. R. Civ. P. 56(e)(2).  Because Plaintiffs have failed to offer specific facts showing that a genuine issue exists as to whether or not the severance plan is an ERISA plan, see id., and because Plaintiffs' state law claims are dependent upon the existence of the plan, the Court finds that Plaintiffs' state law claims are pre-empted.  Therefore, IBM is granted summary judgment as to Count Four.

### E.    Rule 56(f) Defense

Plaintiffs oppose summary judgment under Fed. R. Civ. P. 56(f) because discovery is incomplete.  Under Rule 56(f), a party opposing a motion for summary judgment may show by affidavit that "it cannot present facts essential to justify its opposition," and upon such affidavit, the court may deny the motion or order a continuance.  A Rule 56(f) affidavit must specify "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not been previously obtained."  Dowling v. City of Philadelphia, 855 F.2d 136, 139-40 (3d Cir. 1988).

Plaintiffs proffer that further discovery is necessary into the "degree of discretion afforded to Plan fiduciaries" and into "internal safeguards intended to check over-zealous adjudication practices."  Plaintiffs' br. at 22-23.  Plaintiffs' discovery relates to their claims in Count One seeking LTD benefits because of the standard of review used in evaluating Dr. Stallings' claim for benefits.  However, because the Court finds that Plaintiffs' Count One claim is untimely and does not reach the standard of review issue, Plaintiffs' desired discovery has no bearing on the

motions before the Court.  Thus, Plaintiffs' Rule 56(f) defense is denied.

**F.      Motion to Amend**

Plaintiffs filed a motion to amend under Federal Rule of Civil Procedure 15(a) with their cross motion for partial summary judgment on April 1, 2009.  Docket No. 22.  Plaintiffs seek to add three state law claims against IBM and John Doe(s) based on the denial of benefits under the Sickness and Accident Plan and one state law claim based on intentional infliction of emotional distress.  Plaintiffs' br. at Ex. RR.  Defendant IBM opposes the motion arguing that Plaintiffs have failed to show the new claims have "substantial merit" or that they are supported by "substantial and convincing evidence," and on the basis that allowing the amendments will cause undue delay and prejudice.  IBM reply br. at 3-7.  The Scheduling Order for this case set the deadline for amending pleadings as December 31, 2008, Docket No. 13 at ¶ 5, and that deadline was not changed by Magistrate Judge Schneider's subsequent amended Order on May 8, 2009.  Docket No. 34.

A plaintiff may amend its complaint after a responsive pleading has been filed only with the opposing party's written consent or with leave of court.  Fed. R. Civ. P. 15(a)(2).  "The court shall freely give leave when justice so requires."  Id.  "'[P]rejudice to the non-moving party is the touchstone for denial of an amendment.'"  Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993) (quoting Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).  "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."  Id. at 1414.  Leave to amend may be appropriate even if "considerable proceedings [have] transpired" or discovery is

28

complete.  See Coventry v. United States Steel Corp., 856 F.2d 514, 518, 519 (3d Cir. 1988).

Notwithstanding the liberal amendment standards in Rule 15, leave to amend is also

governed by Federal Rule of Civil Procedure 16 in certain circumstances.  Rule 16 governs

pretrial management and specifically scheduling orders.  Under Rule 16(b)(4), a scheduling order

may only be modified for "good cause."  Where deadlines for amending pleadings are the subject

of a scheduling order and the deadlines have passed, the moving party must meet Rule 16's good

cause standard in order to amend.  See Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d

330, 340 (3d Cir. 2000) (affirming district court's denial of motion to amend on basis of Rule

16(b) where amendment sought six months after deadline); Dimensional Commc'ns, Inc. v. Oz

Optics, LTD., 148 Fed. Appx. 82, 85 (3d Cir. 2005) (affirming denial where leave to amend

sought five months after deadline, noting Third Circuit has adopted a "good cause" standard for

amending); see also Assadourian v. Harb, No. 06-cv-896, 2008 WL 4056361, at *2 (D.N.J. Aug.

28, 2008) (holding motion to amend after scheduling order deadline has passed is treated as

motion to amend pretrial scheduling order).  Rule 16 governs in these situations rather than Rule

15 because scheduling orders would otherwise "be nullified if a party could inject amended

pleadings upon a showing of less than good cause after scheduling deadlines have expired."

Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990).

Plaintiffs purported "good cause" for amending the Complaint after the scheduling

deadline has passed is that they only became aware of the ability to raise the proposed claims

upon review of 1900+ documents supplied by IBM during discovery.  Plaintiffs' reply br. at 4-5,

9-10.  Plaintiffs claim that only upon review of these documents, and upon review of Dr.

Stallings' personal records, did they realize that they had additional grounds for relief under state

29

law.  Id. at 9-10.   Plaintiffs undisputedly received IBM's documents in October 2008 as part of

IBM's initial disclosures under Rule 26, id. at 3, and presumably had Dr. Stallings' records

throughout.

      The Court finds that Plaintiffs have not stated good cause for allowing an amendment

after the December 31, 2008 Scheduling Order deadline.  Even if IBM's records were

"unindexed" and "out of sequence" as Plaintiffs assert, see Plaintiffs' reply br. at 3, Plaintiffs still

had over 60 days in which to review the records and state additional claims.  Even if such a task

could not be completed in that time, Plaintiffs could have moved for an extension of the

pleadings deadline, which was not done and not explained.  Cf. Assadourian, 2008 WL 4056361,

at *3 (holding party lacked good cause for amendment where failed to explain why he did not

request an extension to file an amended pleading).

      Moreover, Plaintiffs had sufficient information to state the proposed claims well in

advance of the Scheduling Order deadline.  Perhaps the most common basis for finding a lack of

good cause is the party's knowledge of the potential claim before the deadline to amend.  See

Dimensional Commc'ns, 148 Fed. Appx. at 85 ("Magistrate Judge Arleo found that Oz could not

satisfy Rule 16(b)'s good cause requirement because Oz was in possession of the facts

underlying the proposed counterclaim well before the amendment deadline."); Assadourian, 2008

WL 4056361, at *3 ("Plaintiff concedes that, 'prior to the Harb deposition [,] he was in

possession of random and isolated documentary materials which seemed to support the proposed

RICO claim amendments.'"); Prime Ins. Syndicate v. United Risk Mgmt. Srvcs., No. 03-cv-

1050, 2006 WL 2085388, at *5 (D.N.J. July 25, 2006) ("Plaintiff provided no reason for why it

could not have asserted these new claims against Krauze within the requisite deadlines.  In fact,

in Plaintiff's brief for this appeal, it acknowledges that it 'had knowledge of the OTSC allegations since October 2004.'"); Harrison Beverage, 133 F.R.D. at 469 ("This is most definitely not a motion in which any of defendant's six proposed new affirmative defenses arose from recent discovery in the case.").  Plaintiffs here undisputedly had all of the relevant documents necessary to state the proposed state law claims before the amendment deadline had run.  In fact, a reading of Plaintiffs' Complaint without the claims for relief would lead an ordinary reader to believe Plaintiffs were about to seek relief for denial of *both* S & A benefits and LTD benefits.  However, Plaintiffs for some reason did not state an S & A claim in the original Complaint, but instead have only attempted to do so – tellingly – after IBM and Metlife tipped their hand with dispositive motions that dispatched Plaintiffs' existing claims.  For these reasons, Plaintiffs have failed to show good cause why they should be allowed to amend the Complaint after the Scheduling Order deadline, and Plaintiffs' motion to amend is denied.

Notwithstanding, even if Plaintiffs could show good cause, the amendment would still be disallowed under Rule 15 because of the prejudice to IBM.  Prejudice may result from an amendment where a party has to change "tactics or case theories" because of the new claims. See Kiser v. Gen. Elec. Corp., 831 F.2d 423, 428 (3d Cir. 1987) (holding no prejudice where non-moving party could not show amendment would affect tactics or case theories).  Prejudice may also result where the amendment will require the re-opening of discovery, would delay resolution of the matter, or would unnecessarily increase the cost of litigation.  See Textron Fin'l-New Jersey, Inc. v. Herring Land Group, LLC, No. 06-cv-2585, 2009 WL 690933, at *5 (D.N.J. Mar. 11, 2009).

IBM asserts that if an amendment is allowed now, it will be prejudiced because it

navigated discovery solely on the basis of Plaintiffs' existing claims for LTD benefits, and because the new claims will deprive IBM of the opportunity to develop defenses to the new claims. IBM reply br. at 6-7. The Court is persuaded by these claims. Allowing Plaintiffs to amend now will most assuredly require re-opening of discovery. Plaintiffs' claims admittedly arise only under state law, and until now, discovery has proceeded as if federal law governs. Moreover, Plaintiffs have known since 2002 that Dr. Stallings did not receive S & A benefits and have believed for some time that she was wrongly denied relief. See IBM SJ br. at Ex. L (April 1, 2005 letter from Richard Yaskin to IBM). To permit Plaintiffs to amend the Complaint now to state claims for relief that have existed for some time would unnecessarily delay this litigation and increase costs. Cf. Lorenz, 1 F.3d at 1414 (affirming denial of leave to amend where plaintiff had necessary information to state claim when filed original complaint). Thus, even if Plaintiffs could show good cause under Rule 16, their motion to amend would be denied under Rule 15.

Therefore, Plaintiffs' motion to amend is denied.

## G.   John Doe Defendants

Plaintiffs have stated claims against John Doe defendants. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party." A court my drop John Doe defendants under this rule. Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006). Because Plaintiffs have failed to identify any unknown defendants, and because Plaintiffs' claims otherwise fail for the reasons discussed above, the Court dismisses the John Doe defendants.

**IV.    Conclusion**

For the foregoing reasons, the motion for summary judgment filed by IBM and R.A.

Barnes is **GRANTED**.  The motion to dismiss filed by Metropolitan Life Insurance Company is

**GRANTED**.  The motion for partial summary judgment filed by Plaintiffs Mary and Patricia

Stallings is **DENIED**.  The motion to amend filed by Plaintiffs Mary and Patricia Stallings is

**DENIED**.  The John Doe defendants are **DISMISSED**.

Dated:   9-8-2009           /s/ Robert B. Kugler
                            ROBERT B. KUGLER
                            United States District Judge

33